UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARK J. WELCZ,

                    Plaintiff,

-vs-                                        Case No.  6:12-cv-106-Orl-22GJK

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____

## REPORT AND RECOMMENDATION

TO THE UNITED STATES DISTRICT COURT:

Mark J. Welcz (the "Claimant") appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for benefits.   Doc. No. 1. Claimant maintains that the final decision of the Commissioner should be reversed and remanded for an award of benefits because the Administrative Law Judge (the "ALJ") erred at step-five of the sequential evaluation process by relying exclusively on the medical vocational grids and, based on the testimony of the vocational expert (the "VE"), Claimant is entitled to an award of benefits.  Doc. No. 1 at 12-21.  For the reasons set forth below, it is recommended that the final decision be **REVERSED and REMANDED**.

I.      **BACKGROUND.**

Claimant was born on June 24, 1954, and has a general education diploma plus a year and a half of college education.  R. 87, 378.  Claimant's past employment history includes working as a forklift driver, warehouse worker, cashier, equipment installer, and telemarketer.  R. 400-01.

On January 16, 2008, Claimant filed applications for both social security disability benefits and supplemental security income.  R. 87-87.  Claimant originally alleged an onset date of disability beginning on December 31, 2000, but, at the hearing before the ALJ, Claimant amended his alleged onset date to March 15, 2006.  R. 376-77.  Claimant alleges disability due to "[b]ack, legs, feet, and neck problems, depression, anxiety, high blood pressure," and problems with concentration, persistence, and pace.  R. 109.

Claimant's applications were denied initially and upon reconsideration.  R. 28-31, 48-56.  On March 30, 2010, a hearing was held before ALJ Janet Mahon.  R. 372-404.  Claimant and VE Randolph Salmons were the only persons to testify.  R. 372-404.  During the hearing, the follow exchange occurred between the ALJ and the VE:

> ALJ:   Let's take a hypothetical claimant who is 55 years old with a GED plus one year of college with the past vocational experience [of Claimant] who can occasionally lift 20 pounds, frequently lift 10 pounds.  Can stand and walk for up to six hours in an eight hour work day.  Can sit for up to six hours in an eight hour work day.  Can only occasionally stoop and crouch and bend.  Would that individual be able to perform the [C]laimant's past work?
>
> VE:    That hypothetical person could perform the past work of [telemarketer] if given credit for the amount of time in the position.
>
> ALJ:   All right.  If in addition that individual is limited to simple routine tasks and a low level of interaction with the public because of possible anxiety attacks would that eliminate any of those prior jobs?
>
> VE:    Yes, it would eliminate all the prior jobs that were covered in my testimony.
>
> ALJ:   Okay.  All right.  Now what jobs would that individual be able to perform?
>
> VE:    What jobs would that individual be able to perform?

> ALJ:   Yes, since his prior work is eliminated.   Are there other jobs that he would be able to perform?
>
> VE:   Well, let me clarify your hypothetical before I answer to be sure I understand it.   We're talking about exertional level at the light [level]. . . .
>
> ALJ:   Yes.
>
> VE:   [T]he age 55 - -
>
> ALJ:   Yes.  .  .  .   And routine simple tasks with not much interaction with the public.
>
> VE:   Right.   No, there would not be any jobs with that total vocational profile that I could identify.

R. 401-02 (emphasis added).   Thus, the VE testified that a hypothetical individual with Claimant's age, education, and vocational history who is exertionally limited to light work with the additional nonexertional limitations of only occasional crouching, bending, and stooping, simple and routine tasks, and not much interaction of the public could not perform any of Claimant's past relevant work or any other work that exists in the national economy.   R. 401-02.

On May 5, 2010, the ALJ issued a partially favorable decision.   R. 11-27.   The ALJ found that Claimant was not disabled prior to June 23, 2009.   R. 27.   Because Claimant's disability insurance expired on March 31, 2006, and Claimant did not become disabled until June 23, 2009, Claimant's application for disability insurance benefits was denied.   R. 17, 27.   Claimant's application for supplemental security income was approved beginning on June 23, 2009.   R. 27.

At step-two, the ALJ found that Claimant suffers from the following severe impairments: degenerative disc disease and an affective disorder.   R. 17.   The ALJ determined that Claimant retains the residual functional capacity ("RFC") for light work with the following exceptions: "limited to occasional stooping, crouching, and bending; and limited to the performance of

-3-

simple, routine tasks." R. 21 (emphasis added). At step-four, without elaboration, the ALJ concluded that "[s]ince March 15, 2006, the [C]laimant has been unable to perform any past relevant work." R. 25.

At step-five, the ALJ noted that prior to June 23, 2009, Claimant was an individual who was closely approaching advanced age, but after that date Claimant's age category changed to an individual of advanced age. R. 25. Relying upon the medical vocational grids as a framework, the ALJ determined that prior to June 23, 2009, the Claimant is not disabled. R. 25-26. The ALJ stated:

> The [C]laimant would be limited to unskilled work. . . . In determining whether a successful adjustment to other work can be made, the [ALJ] must consider the [C]laimant's [RFC], age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the [C]laimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending on the [C]laimant's specific vocational profile (SSR 83-11). When the [C]laimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the medical-vocational rules are used as a framework for decision making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or non-exertional limitations (SSRs 83-12 and 83-14). . . .
>
> Prior to June 23, 2009, if the [C]laimant had the [RFC] to perform the full range of light work, considering the [C]laimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14. The [C]laimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. However, the additional limitations had little or no effect on the occupational base of unskilled light work. Therefore, prior to the established onset date of disability, a finding of "not disabled" is appropriate under the framework of this rule.

R. 26 (emphasis added).  Thus, the ALJ began by stating that the Claimant is limited to unskilled

work and then discussed the basic procedure for utilizing the medical vocational grids.  R. 25-26.

Thereafter, the ALJ stated that Claimant's ability to perform all or substantially all of the

requirements of light work was "impeded by additional limitations."  R. 26.  Nevertheless, the

ALJ found that the additional limitations "had little or no effect on the occupational base of

unskilled light work."  R. 26.  Therefore, using the medical vocational grids as a framework, the

ALJ determined that Claimant was not disabled prior to June 23, 2009.  R. 26.

> The ALJ then explains:

> > Prior to June 23, 2009, the [C]laimant would be limited to light exertional work with occasional stooping, crouching, and bending and to the performance of simple, routine tasks.  Social Security Rulings 83-14 and 85-15 state that stooping and bending are required only occasionally in the performance of light work [and] [c]rouching is not required in light work (SSR 83-14).
> >
> > The [C]laimant has the [RFC] to perform unskilled work. "Unskilled work," as defined in 20 CFR 404.1568(a) and 416.968(a), is work which needs little or not [sic] judgment to do simple duties that can be learned on the job in a short period of time, such as machine tending. Rule 202.14 includes consideration of a limitation to the performance of unskilled work and directs a conclusion of "not disabled."
> >
> > In view of the above, the [ALJ] is persuaded that the [C]laimant could have been expected to make a vocational adjustment to jobs which exist in significant numbers in the national economy prior to Judge 23, 2009.

R. 26 (emphasis added).  Thus, the ALJ concludes that because stooping and bending are only

required occasionally in light work, and crouching is not required, those limitations do not affect

the occupational base of light work.  R. 26.  As for Claimant's limitations to simple and routine

tasks, the ALJ states that Claimant retains the RFC for unskilled work, and the medical

vocational grids include limitations to unskilled work within the definition of Rule 202.14.   R. 26.  Therefore, despite Claimant's additional limitations, using the medical vocational grids as a framework, the ALJ concluded that there were significant jobs that exist within the national economy that Claimant can perform.  R. 26.  Accordingly, the ALJ found that Claimant was not disabled prior to June 23, 2009.  R. 26-27.

The Appeals Council denied Claimant's request for review of the ALJ's decision.  R. 7-10.  On January 24, 2012, Claimant appealed the final decision of the Commissioner in the District Court.  Doc. No. 1.

## II.    LEGAL STANDARDS.

### A.    THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.  *See* 20 CFR §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id.* (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

###   B.   STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991)).

When the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if it would have reached a contrary result as the finder of fact, or finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into account both favorable and unfavorable evidence to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court must consider evidence detracting from evidence on which Commissioner relied).  However, the District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## C.    REMEDIES.

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause.   42 U.S.C. § 405(g)(Sentence Four).   To remand under sentence four, the District Court must either find that the Commissioner's decision applies the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence.   *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled)).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.   *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).   A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice.   *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982).   The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences.   *Jackson*, 99 F.3d at 1089-

92, 1095, 1098.   Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision.  *Falcon v. Heckler*, 732 F.2d 827, 829- 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[1]

## III.   ANALYSIS.

### A.  The Grids.

At step-four, once a claimant establishes that the combination of his or her impairments prevent the performance of past relevant work, the burden shifts to the Commissioner at step-five to show that the claimant is able to perform other work that exists in significant numbers in the national economy.  *Cowart v. Schweiker*, 662 F.2d 731, 736 (11th Cir. 1981); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1989) (At step-five, "the burden shifts to the Secretary to prove that the claimant is capable, considering his age, education, and work experience [and RFC], of engaging in any other kind of substantial gainful work which exists in the national economy."). This case presents the issue of whether at step-five the ALJ appropriately relied on the medical vocational grids as a framework in determining that other significant work exists in the national economy that Claimant can perform without relying upon testimony from a VE.   In order to resolve the issue in this case, an explanation of how the grids may be used, either to direct a decision or as a frame work for decision making, in various circumstances is appropriate.

---

[1] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In 1978, the Secretary of the Department of Health and Human Services promulgated the medical vocational guidelines, which may, in certain circumstances, allow an ALJ to determine at step-five whether a claimant may engage in other kinds of substantial gainful work existing in significant numbers in the national economy based upon the Claimant's age, education, work experience, and RFC without introducing testimony from a VE. *See Heckler v. Campbell*, 461 U.S. 458, 460-61 (1983) (discussing the promulgation of the regulations implementing the grids).[2]  As the United States Supreme Court stated in *Campbell*, 461 U.S. at 461-62:

> These guidelines relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy. They consist of a matrix of the four factors identified by Congress - physical ability, age, education, and work experience - and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.

*Id*.   Thus, the purpose of the medical vocational grids is to provide the ALJ with substantial evidence upon which they may rely in an efficient manner to determine whether significant

---

[2] In *Campbell*, 461 U.S. at 461, the United States Supreme Court explained the following purpose for the creation of the grids:

> Prior to 1978, the Secretary relied on vocational experts to establish the existence of suitable jobs in the national economy. After a claimant's limitations and abilities had been determined at a hearing, a vocational expert ordinarily would testify whether work existed that the claimant could perform. Although this testimony often was based on standardized guides, *see* 43 Fed.Reg. 9286 (1978), vocational experts frequently were criticized for their inconsistent treatment of similarly situated claimants. *See Santise v. Schweiker*, 676 F.2d 925, 930 (CA3 1982); J. Mashaw et al., *Social Security Hearings and Appeals* 78-79 (1978). To improve both the uniformity and efficiency of this determination, the Secretary promulgated medical-vocational guidelines as part of the 1978 regulations. See 20 CFR pt. 404, subpt. P, app. 2 (1982).

*Id*.  The Court stated that approximately 2.3 million claims for disability were filed in 1981, requiring a quarter of a million hearings before ALJs.  *Id*. at n. 2.   Thus, the Court stated that "the need for efficiency is self-evident."  *Id*.

number of jobs exist that a claimant can perform based upon the claimant's age, education, work experience and RFC.  *Id*.[3]  When the grids are properly used, there is no need to introduce independent evidence of specific jobs that are available in significant numbers that the claimant can perform.  *Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir. 1985) (citing *Campbell*, 461 U.S. at 468-72).  This is so because the regulations provide that:

> [A]dministrative notice has been taken of the number of unskilled jobs that exist throughout the national economy at the various functional levels (sedentary, light, medium, heavy, and very heavy) as supported by the [DOT] and the "Occupational Outlook Handbook," published by the Department of Labor; the "County Business Patterns" and "Census Surveys" published by the Bureau of the Census; and occupational surveys of light and sedentary jobs prepared by the Social Security Administration by various State employment agencies.

20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(b) (emphasis added).  *See also* 20 CFR § 404.1566(d) (explaining that administrative notice will be taken of the number of unskilled sedentary, light, and medium jobs that exist in the national economy).  In *Campbell*, 461 U.S. at 468, the United States Supreme Court upheld the validity and use of the medical vocational grids.  *Id*.[4]

Nevertheless, use of the medical vocational grids to direct a decision or to be used as a framework for decision making, standing alone, is not always appropriate.  *See* 20 CFR 404.1569 ("The [medical vocational grids] do not cover all possible variations of factors," and the Commissioner does not "apply these [grids] if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a [grid].").  *See also Campbell*, 461 U.S. at 462 n. 5 ("[T]he regulations provide that the [grids] will be applied

---

[3] The terms "grids," "guidelines," and "rules" are used synonymously throughout this report and recommendation when referring to the medical vocational grids.

[4] The medical vocational grids may be found at 20 CFR Part 404, Subpart P, Appendix 2.

only when they describe a claimant's abilities and limitations accurately.") (emphasis added).

Initially, the ALJ makes factual findings as to the claimant's exertional RFC, age, education, and work experience.  20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(a); 20 CFR § 404.1569a(a).  Exertional limitations include only the strength demands of work – sitting, standing, walking, lifting, carrying, pushing, and pulling.  20 CFR § 404.1569a(b).  The Dictionary of Occupational Titles (the "DOT") classifies jobs that exist in the national economy by their exertional and skill requirements.  20 CFR § 404.1569.  With respect to the exertional requirements of work, the Commissioner has adopted the classifications, and their respective meanings, of the DOT's classifications – sedentary, light, medium, heavy, and very heavy.  20 CFR 404.1567(a)-(e) (explaining the adoption of the DOT's classifications and defining the terms).  Thus, at step-five, the ALJ initially makes factual findings only as to the claimant's exertional RFC (sedentary, light, medium, heavy, or very heavy), age, education, and work experience.  *See Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985) (initially only exertional limitations are considered).[5]

For claimants found capable of a full range of the exertional requirements of sedentary, light, or medium work, the grids provide corresponding tables for each of those classifications and account for the additional factors of age, education, and work experience.  *See* 20 CFR Pt. 404, Subpt. P, App. 2.  It is only where the claimant's exertional RFC and additional factors correspond exactly with all the particular criteria of a given rule that the grids direct a result. *See* 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00.[6]  If the grids direct a result, they are not used as a

---

[5] Non-exertional limitations, if they exist, come into play later in the analysis.

framework, but "leave no discretion to the ALJ, for they direct the ultimate conclusion of whether a claimant is capable of other substantial gainful work in the national economy." *Broz v. Schweiker*, 677 F.2d 1351, 1356 (11th Cir. 1982), *adhered to sub nom. Broz v. Heckler*, 711 F.2d 957 (11th Cir. 1983).   Thus, if a claimant has only exertional limitations – limitations in the ability to sit, stand, walk, lift, carry, push, and pull – and if those exertional limitations correspond exactly to the definitions of sedentary, light, medium, heavy, or very heavy work, after applying the additional factors for age, education, and work experience the medical vocational grids will direct a decision as to whether the claimant is disabled or not.  *See* 20 CFR § 404.1569a(b); 20 CFR § 404.1567(a)-(e); 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00. *See also Gibson v. Heckler*, 762 F.2d 1516, 1521 (11th Cir. 1985) (holding grids did not "direct" result of not disabled where the ALJ found that the claimant could only perform "some sedentary work").[7]

Nonexertional limitations affect a claimant's ability to meet the demands of work unrelated to the strength demands of that work.  20 CFR § 404.1569a(c)(1).  Examples of non-exertional impairments include limitations in the ability to: manage pain, bend, stoop, crouch, climb, crawl, understand or remember instructions, maintain attention, concentration or pace, see, speak or hear, tolerate environmental conditions in the workplace, and socially function in

---

[6] For example, Rule 201.01 directs that if an individual is capable of the full range of sedentary work, is of advanced age, with a limited education, and has only unskilled work experience, then the individual is disabled.  *See* 20 CFR Pt. 404, Subpt. P, App. 2 § 201.01.

[7] The Eleventh Circuit has repeatedly stated that "[e]xclusive reliance upon the grids is not appropriate . . . when the claimant is unable to perform a full range of work at a given residual functional level. . . ."  *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985); *Walker v. Bowen*, 826 F.2d 966, 1002-03 (11th Cir. 1985) (quoting *Francis*); *Welch v. Bowen*, 854 F.2d 436, 439 (11th Cir. 1988) (quoting *Walker*); *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (quoting *Walker*); *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995) (quoting *Walker*); *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996) ("The ALJ should not rely exclusively on the grids when the claimant . . . cannot perform the full range of employment at the appropriate level of exertion."); *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004) (quoting *Francis*).

the workplace.  20 CFR § 404.1569a(c)(1).

If a claimant has both exertional and nonexertional limitations, the regulations state the following:

> [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.

20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(e)(2) (emphasis added).  Thus, if a claimant has both exertional and nonexertional impairments, and the exertional limitations alone do not direct a finding of disability, the grids are used only as a framework for decision making.  *Id*.  *See also* 20 CFR § 404.1569a(d) (if claimant has both exertional and nonexertional limitations "we will not directly apply the [grids, but] the rules provide a framework to guide our decision.").

With respect to what the regulations mean by a "framework for decision making," Social Security Rule 83-14, provides:

> Where a person cannot be found disabled on strength limitations alone, the rule(s) which corresponds to the person's vocational profile and maximum sustained work capability . . . will be the starting point to evaluate what the person can still do functionally. The rules will also be used to determine how the totality of limitations or restrictions reduces the occupational base of

> administratively noticed unskilled sedentary, light, or medium jobs.  A particular additional exertional or nonexertional limitation may have very little effect on the range of work remaining that an individual can perform.  The person, therefore, comes very close to meeting a table ruling which directs a conclusion of "Not disabled."  On the other hand, an additional exertional or nonexertional limitation may substantially reduce a range of work to the extent that an individual is very close to meeting a table rule which directs a conclusion of "Disabled."  Use of a vocational resource may be helpful in the evaluation of what appears to be "obvious" types of cases.  In more complex situations, the assistance of a vocational resource may be necessary. . . .  Vocational experts may testify for this purpose. . . . Where it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule . . . would not be affected.

SSR 83-14, 1983 WL 31254 at *3-4 (emphasis added).  Thus, although use of a vocational resource or vocational expert may be "helpful" in some cases and "necessary" in other more complex but unspecified types of cases, where it is clear that the additional limitations have little effect on the occupational base of work at a given exertional level, the ALJ may apply the same conclusion as would be directed by the grids as if the claimant's RFC, age, education, and work experience coincided exactly with the particular grid. *Id.*

In *Sryock v. Heckler*, 764 F.2d 834, 835-36 (11th Cir. 1985), the ALJ found that the claimant retained the RFC for light work with additional nonexertional limitations of no work involving a heavily polluted environment.  *Id.*[8]  The claimant argued that the ALJ erred by relying upon the grids.  *Id.*  The Eleventh Circuit held:

> [W]hen both exertional and nonexertional work impairments exist the grids may still be applicable.  Non-exertional limitations can cause the grids to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at the designated [exertional] level.  Therefore, when both exertional

---

[8] *Sryock* is the first post-grids and post-*Campbell* published decision cited by the parties addressing the issue at hand.

> and nonexertional limitations affect a claimant's ability to work, the ALJ should make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.   Courts will review this determination only to determine whether it is supported by substantial evidence.

*Id.* at 836 (emphasis added) (internal quotations omitted).   Thus, in *Sryock*, the Eleventh Circuit held that the grids are only inapplicable when the nonexertional limitations are severe enough to prevent a wide range of gainful employment at a designated exertional level, and the ALJ must make a specific factual finding thereof.   *Id.*

In *Sryock*, the Court remanded the case to the Commissioner, stating:

> In the present case, the ALJ appears to have found, in vague terms, the existence of a nonexertional limitation. As stated by the ALJ, appellant is physically able to perform light work but, due to breathing problems accompanying his disease, he cannot do this work in a "heavily polluted environment." We find no problem with the evidence upon which the ALJ's findings were made. However, the ALJ made no findings as to whether this nonexertional, environmental limitation was severe enough to prevent appellant from performing a wide range of light work which exists in the national economy.
>
> It is not clear from the record what sort of pollution or other impurities in the work environment would make it impossible for this claimant to perform light work. Depending upon the extent of this nonexertional impairment, it may be that the grids should not have been used. If this environmental limitation merely limits appellant from working in environments that exist only rarely in the work place, so that available light work is not significantly restricted by this limitation, then the use of the grids, which compelled a finding of no disability, is legitimate. If the ALJ is referring to an environmental limitation which is relatively prevalent in the work place and thus significantly limits work opportunities, then the finding of this limitation makes it improper to use the grids, and proof of the availability of suitable work in the national economy would have to be demonstrated by other evidence, perhaps through a vocational expert familiar with the availability of such work.

-16-

> We are unable to discern from the record whether appellant's environmental limitations are severe enough to prevent him from performing a wide range of light work. We thus remand to the district court, with instructions to remand to the Secretary, for further findings as to the extent of the environmental limitation and, if necessary, the taking of further evidence as to the existence of work which appellant is capable of performing in the national economy.

*Id.* at 837 (emphasis added).   Therefore, in *Sryock*, the Eleventh Circuit held that unless the nonexertional limitations "are severe enough to preclude a wide range of employment at the given work capacity level" an ALJ may utilize the grids without receiving testimony from a VE, but the ALJ must make a specific factual finding to that effect and it must be supported by substantial evidence.  *Id.  Accord Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992); *Walker v. Bown*, 826 F.2d 996, 1003 (11th Cir. 1987) ("When both exertional and non-exertional impairments affect a claimant's ability to work, the ALJ is supposed to make a specific finding as to whether they preclude a wide range of employment.").

The Eleventh Circuit also later stated that "[a]n ALJ's conclusion that a claimant's limitations do not significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a vocational expert." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).  Similarly, in *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), the Eleventh Circuit broadly stated that "[i]f nonexertional impairments exist, the ALJ may use Medical-Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform."  *Id.*

More recently, in *Phillips v. Barnhart*, 357 F.3d 1232, 1242-43 (11th Cir. 2004), the Eleventh Circuit clarified that:

> If the ALJ concludes that Phillips cannot perform a full range or unlimited types of work at the sedentary level given her <u>exertional limitations</u>, then the ALJ must consult a vocational expert to determine whether there are sufficient jobs at the sedentary work level within the national economy that Phillips can perform. If, however, the ALJ concludes that Phillips can perform a full range or unlimited types of work at the sedentary level <u>despite any exertional limitations</u>, the <u>ALJ next must determine to what extent Phillips's nonexertional limitations affect her ability to secure employment at the sedentary work level in the national economy</u>.

*Id.* (emphasis added). Therefore, an ALJ must first determine whether a claimant is capable of performing unlimited types of work or a full range of work at a given exertional level based solely on the claimant's exertional limitations. *Id.* If a claimant's exertional limitations are such that he cannot perform a full range of work at the given exertional level, the ALJ must consult a VE. If a claimant's exertional limitations permit a full range of work at a given functional level, then the ALJ must analyze whether the nonexertional impairments further limits the claimant's ability to work at that exertional functional level. *Id.*

With respect to the ALJ's consideration of the nonexertional impairments, the Eleventh Circuit then held:

> When determining to what extent Phillips's nonexertional limitations affect her ability to secure employment in the national economy, the test is slightly different. When considering Phillips's nonexertional limitations, <u>the ALJ need only determine whether Phillips's nonexertional impairments significantly limit her basic work skills</u>. This Court has interpreted "significantly limit basic work skills" as limitations that prohibit a claimant from performing "a wide range" of work at a given work level. *See Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995) (The ALJ must determine "whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity

level." (emphasis added) (internal quotation marks and citations omitted)).

> If the ALJ determines that Phillips's nonexertional limitations do not significantly limit her basic work skills at the sedentary work level, then the ALJ may rely on the grids to determine if Phillips is disabled. If, however, the ALJ determines that Phillips's nonexertional limitations significantly limit her basic work skills at the sedentary work level, then the ALJ must consult a vocational expert.

*Id.* at 1243 (emphasis added).   Thus, consistent with the Eleventh Circuit's earlier holding in *Sryock*, the Court held that if the nonexertional limitations do not significantly limit a claimant's ability to perform a wide range of work at a given exertional level, then the ALJ may rely upon the grids as a framework to determine whether the claimant is disabled.  *Id.*  If the ALJ determines that the nonexertional limitations prevent a wide range of work at the exertional level, the ALJ may not rely upon the grids as a framework and must consult a VE.  *Id.*

With respect to other panel decisions that may have stated otherwise, the Eleventh Circuit clarified that:

> A few isolated cases contain language that might be interpreted as, at the very least, blurring the line between exertional limitations and nonexertional limitations, on the one hand, and a full range or unlimited types of work and wide range or significantly limiting basic work skills on the other. However, we do not read these decisions as creating any intra-circuit conflict. In any event, the prior precedent rule requires this Court to follow the decision issued first in time that established the appropriate test.

*Id.* at 1243 n. 14 (internal citations omitted).  Thus, while some panel decisions of the Eleventh Circuit have, since *Sryock*, made broad statements indicating that if a claimant has nonexertional impairments, an ALJ may not utilize the grids as a framework and must consult a VE to determine whether or not they significantly limit the claimant's ability to perform a wide range

of work at the given exertional level, the Eleventh Circuit stated in *Phillips* that the prior

precedent rule should be followed, which requires this Court to follow *Sryock*. *Id*.

### B.  Application.

Claimant argues that the ALJ erred at step-five by relying upon the medical vocational

grids without introducing independent evidence, preferably from a VE, of the existence of jobs in

the national economy that Claimant can perform.  Doc. No. 19 at 12-19 (citing and quoting

*Wilson*, 284 F.3d at 1227; *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989)).  Claimant

acknowledges that a limitation to simple tasks is included within the definition of unskilled

work, but Claimant argues that a limitation to routine work is not and, therefore, the ALJ's

finding is not supported by substantial evidence.   Doc. No. 19 at 15-16 (citing *Vuxta v.*

*Commissioner of Social Security*, 194 Fed.Appx. 874, 878 (11th Cir. 2006) (unpublished)

(finding that simple tasks are included in the definition of unskilled light work, but a limitation to

repetitive tasks is not, and remanding for further proceedings)).[9]  The Commissioner argues that

the ALJ properly relied upon the medical vocational grids as a framework because the limitation

to simple work is contained within the definition of unskilled work.  Doc. No. 21 at 8 (citing 20

CFR 404.1568(a); Vuxta, 194 Fed.Appx. at 878.[10]

In this case, the ALJ determined that the Claimant has the RFC for light work with the

following additional nonexertional limitations: 1) occasional stooping, crouching, and bending;

---

[9] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.  *See* Eleventh Cir. R. 36-2.

[10] The Commissioner does not directly address Claimant's argument that a limitation to routine work is not included in the definition of unskilled work.  However, the Commissioner does implicitly argue that the routine work is included in the definition of unskilled work.  Doc. No. 21 at 8 (quoting *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180 (11th Cir. 2011) ("When medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that [a limitation to] unskilled work sufficiently accounts for such limitations.")).

2) simple tasks; and 3) routine tasks. R. 21. At step-four, the ALJ determined that based upon Claimant's RFC, he is unable to perform his past relevant work, and then the ALJ proceeded to step-five of the sequential evaluation process. R. 25-26.[11] At step-five, based upon the Claimant's age, education, work experience, and RFC, the ALJ utilized the medical vocational grids as a framework for decision making to determine that a significant number of jobs exist in the national economy which Claimant can perform and, therefore, Claimant has not been disabled prior to June 23, 2009. R. 25-26.[12]

At step-five, after determining that Claimant is exertionally capable of the full range of light work, the ALJ determined that Claimant is limited to unskilled work and Claimant's additional nonexertional limitations "had little or no effect on the occupational base of unskilled light work." R. 26. Thus, the ALJ complied with *Sryock* and *Phillips*, and the only remaining issue is whether that finding is supported by substantial evidence.

In support of that finding, with respect to Claimant's limitations in stooping, crouching, and bending, the ALJ stated that pursuant to SSR 83-14, light work requires only occasional stooping and bending and does not require crouching. R. 26. SSR 83-14 states that "[t]o perform substantially all of the exertional requirements of most . . . light jobs, a person would not need to crouch, and would need to stoop [and bend] only occasionally (from very little up to one-third of the time, depending on the particular job)." 1983 WL 31254 at *2.[13] Accordingly, substantial evidence supports the ALJ's finding with respect to stooping, crouching and bending.

---

[11] No issues have been raised on appeal with respect to the ALJ's finding at step-four, which includes the ALJ's RFC determination.

[12] The ALJ did not find that the medical vocational grids directed a decision, but rather used them as a framework for decision making. *See* R. 25 ("[U]sing the Medical-Vocational Rules as a framework supports a finding that the [C]laimant is 'not disabled.'").

[13] SSR 83-14 explains that stooping and crouching are two types of bending. *Id*. at *2.

With respect to Claimant's limitation to simple work, the ALJ stated that the Claimant is capable of unskilled work. R. 26.[14]   The regulations define "unskilled work" as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 CFR § 404.1568.   The regulations further state administrative notice has been taken based of the number of unskilled light jobs that exist in the national economy in significant numbers. 20 CFR § 404.1566(d).   The medical vocational grids also state that they account for the number of unskilled light work that exists in the national economy. 20 CFR Pt. 404, Subpt. P., App. 2 § 202.00(a)-(b).   In *Vuxta v. Commissioner of Social Security*, 194 Fed.Appx. 874, 878 (11th Cir. 2006) (unpublished), the Eleventh Circuit recognized that "a limitation to simple tasks is already contained within the unskilled limitation, and is not a limitation above and beyond that classification." *Id*.   Therefore, the grids account for limitations to simple tasks by providing administrative notice of the number of unskilled light work positions that exist in the national economy. *Id*.   Accordingly, substantial evidence supports that ALJ's finding with respect to simple tasks.

As to the ALJ's limitation to routine task, the Eleventh Circuit's decision in *Vuxta*, 194 Fed.Appx. at 878, is instructive.   In *Vuxta*, the ALJ determined that the claimant retained the RFC for unskilled light work with additional nonexertional limitations to "simple repetitive tasks." *Id*.   After finding that the limitation to simple tasks is contained within unskilled work, the Eleventh Circuit stated that "a limitation to repetitive tasks, however, is not contained with the definition of unskilled." *Id*.   Therefore, the case was remanded for the ALJ to specifically address the claimant's limitations to repetitive tasks. *Id*.

_____

[14] The Court notes that in determining the Claimant's RFC, the ALJ did not specifically limit the Claimant to unskilled work. *See* R. 21.

-22-

Similarly, in *Coffin v. Commissioner of Social Security*, Case No. 6:09-cv-2061-Orl-DAB, 2011 WL 806674 at *8 (M.D. Fla. Mar. 2, 2011), the ALJ determined that the claimant was limited to "simple, routine, repetitive tasks." *Id*. Magistrate Judge David A. Baker determined that limitations to routine and repetitive tasks "are not within the definition of unskilled" and, therefore, remand was required for the ALJ to provide "some explanation or analysis" as to whether those limitations would preclude a wide range of work at the light level and, if necessary, obtain VE testimony. *Id*.

In this case, at step-five, the ALJ did not specifically address Claimant's limitation to routine tasks or cite to any regulation or rule, which includes such a limitation in the definition of unskilled work. R. 26. While other district courts within the Eleventh Circuit and at least one other Circuit Court of Appeals have found that limitations to simple, routine, and repetitive tasks are all included within or are consistent with the definition of unskilled work, the undersigned is persuaded by the reasoning of *Vuxta* and *Coffin*, and finds that the ALJ should have provided some explanation or analysis specifically concerning Claimant's limitation to routine tasks.[15] Accordingly, it is recommended that the Court find that the ALJ's finding that the "additional limitations have little or no effect on the occupational base of unskilled light work" is not supported by substantial evidence because the ALJ failed to provide any explanation or analysis regarding Claimant's limitation to routine tasks.

---

[15] *See Allison v. Apfel*, 2000 WL 1276950 at *4 (6 t h Cir. 2000) (unpublished) (ALJ's limitation to simple, routine, repetitive tasks means unskilled light work); *Narlock v. Commissioner of Social Security*, Case No. 6:07-cv-524-Orl-31KRS, 2008 WL 3364690 at *7 (M.D. Fla. Aug. 8, 2008) (reversing on other grounds, but finding that limitations to simple, routine instructions are sufficiently accounted for by unskilled work); *Anderson v. Astrue*, 2011 WL 3843683 at *3 (S.D. Ala. Aug. 30, 2011) (limitations to simple and routine tasks are consistent with the regulatory definition of unskilled work).

**C.  Remedy.**

Claimant argues that the appropriate remedy on remand is for an award of benefits based upon the testimony of the VE.  Doc. No. 19 at 19-22.  However, the hypothetical question posed to the VE included an additional limitation – low level of interaction with the public – which was not included in the ALJ's ultimate RFC.  R. 21, 401-02.[16]  Therefore, the VE's testimony is not substantial evidence and, based on this record, it is not clear that Claimant is disabled beyond a doubt.   Accordingly, it is recommended that the Court remand the case to the Commissioner for further proceedings, including, if necessary, testimony from a VE.  *See Coffin*, 2011 WL 806674 at *8 (M.D. Fla. Mar. 2, 2011).

**IV.    CONCLUSION.**

For the reasons stated above, it is **RECOMMENDED** that:

1.  The final decision of the Commissioner be **REVERSED**, pursuant to sentence four of Section 405(g);

2.  The case be **REMANDED** for further proceedings;

3.  The Clerk be directed to enter judgment in favor of the Claimant; and

4.  The Clerk be directed to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

---

[16] *See* supra n. 11.

**RECOMMENDED** in Orlando, Florida on December 17, 2012.


_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests the Clerk
Mail or Deliver Copies of this Order to:

Richard A. Culbertson
Suite E
3200 Corrine Dr
Orlando, FL 32803

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida  33602
Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Janet Mahon
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
Suite 300
3505 Lake Lynda Dr.
Orlando, FL 32817-9801